Thank you, Your Honor. May it please the Court, my name is Brian Brislin. I am here representing Nebraska Beef, Ltd., who is the appellant in this case. I note in reviewing and preparing for today's argument that our briefing did not specifically set forth the jurisdictional statement for this court, although we did address the court below, and we would agree with the government statement that jurisdiction is proper here today under 1291. And the standard of review that this court will apply on this matter is going to be de novo, and I think the parties are in agreement on that point as well. Your Honor, the fundamental issue to be decided in this matter is whether or not having reasonable cause to believe something occurred is the same as a finding that something did, in fact, occur. Counselor, there's a sense to me in which this seems like we may have a problem with our terminology and the terms, and make sure that we're all speaking the same, that when an announcement comes out made generally about something that an agency's found, isn't that a different usage than the specific legalese that we would use in court documents and court proceedings? Your Honor, it may... And a determination of a body of, or a judicial body versus what a prosecutorial entity might conclude? I think in point of fact, those two things are certainly different. In practical sense, in this situation, I don't know that there is any difference. And important to that analysis, when you talk about the terminology, is what the parties agreed to in the settlement agreement that underlies this dispute. But where in the settlement agreement is there a promise on the behalf of the government that it would not say what it believed it had done prior to reaching an agreement? Well, in fact, the agreement specified that the government did agree that it could say what it believed had happened. But to take a belief that something happened and turn it into a finding that it did happen are two different things. And that's the crux of the complaint being made here on this appeal. But why is that the issue in the case? I mean, what forbid them from saying that they made that finding? Their agreement that they had reasonable cause to believe that a violation occurred. But those, why are those two things inconsistent? Because cause to believe something occurred and a finding that it did occur. No, I understand why those might be different. But why is the government saying we had reasonable cause to believe different from them saying and we also found that? Because the very nature of the settlement agreement was that there was no finding that anything actually did happen. No finding by a court? By anyone. That's what the government agreed to. Where does it say that? It says there's no admission of liability, but where does it say the government never found that you did something? Well, it's not in the four corners of the settlement agreement. The four corners of the settlement agreement simply state that the Office of Special Counsel first acknowledges that the respondent, Nebraska Beef, cooperated with the investigation. And then, importantly, it says the Office of Special Counsel concluded based upon its investigation that there is reasonable cause to believe that respondent used documentary practices based on citizenship status in violation of the act. The very next proposition is that Nebraska Beef denies that that's the case. So to extrapolate from that, that we found that it did, in fact, happen, and then we're going to go announce that to the world and the news media outlets go then and report that, that's fundamental difference. That's not what Nebraska Beef agreed to in the four corners of the document. Well, how would that create a defense to your obligation to pay a fine? Because it was a material breach of the agreement. The government failed to uphold it. Can the government then go back and reinstitute its prosecution? If it chose to and there were no other statutory limitation defenses or things of that nature, yeah, I think it could. Now, there might be other defenses and argument to that, but if it chose to reinstate that because the deal fell through, the deal fell through, there's no settlement agreement. That's our view of it. There's no settlement agreement because they materially breached. But there's nothing in the agreement that forbade them from announcing their characterization of the result of the settlement. I would agree that there is actually something in the settlement agreement that specifically allows them to inform the public and educate the public as to the existence of the settlement agreement. I disagree respectfully, Chief Judge Smith, that they are allowed to characterize that settlement agreement as they see fit. They must accurately characterize a settlement agreement. For example, simply because they're authorized to. How is it material? It's sufficient to create an excuse for or a justification for nonpayment. It's material because the company had the public told that they, in fact, did something that they believed did not occur, and that was material to the company. And I think materiality is an issue. This was decided on some cross motion for summary judgment. Would the company pay more or less based on that characterization? Would the company pay more or less? Would its fine be greater or less depending upon the government's characterization? Well, our position is that the fine would be zero because they materially breached. Then if there was additional proceedings that occurred afterwards, the company and the government could evaluate the. I guess what I'm trying to, and it was inartfully asked, but I guess what I was searching for is something that gives some substance to what it is you're saying you suffered because of the government's announcement in the way it did. I think there are a few things that the company had detrimental outcomes to the company that it didn't bargain for in the settlement agreement. The first and foremost is an announcement by a government agency that Nebraska Beef did, in fact, do something, that it was found, quote, unquote, that it did do something. That carries with it a stigma that is publicized throughout the country. So it's reputational harm is what you're talking about. Absolutely, absolutely. And that's a reputational harm that the company didn't bargain for in the agreement. There are other agreements that the government has put in the appendix. But how is that reputational harm different than when any corporate entity or even individual has charges filed against them by a government entity? Well, I think there are several ways, Your Honor. First, depending on the nature of a charge that could be filed against a particular person or entity, those may or may not be publicized. In this case, there was no public informative communication that an investigation was ongoing. The first announcement that was made publicly was the announcement of the settlement agreement that could rightfully inform them that they conducted and informed the public that they conducted an investigation. Are you saying prior to the announcement of the settlement, there had been absolutely no public disclosure of an investigation? Not that I'm aware of. I don't even think there's a protocol for the Office of Special Counsel to make such an investigative announcement. That could be different in other circumstances and settings. But in this particular circumstance, this was the first announcement to the public. The Office of Special Counsel bargained for the right to inform the public of the terms of the settlement agreement and educate the public about the settlement agreement. There's no issue about that. But they can't, for example, go out and misrepresent what that agreement said.  I don't think they said the agreement. I don't think they said Nebraska Beef agrees that the government found. I agree with you, Your Honor. So they didn't misrepresent the agreement. What they did is they supplemented, they added additional views of the government that were not set forth in the agreement. Isn't that really a better characterization of what they did? I think from the perspective of the person about which it was said, I think it was a misrepresentation. I don't quarrel with the court's view of it. I'm just concerned whether the company needed to button that down in the agreement and say that the government won't make any public statement other than what was set forth in the agreement or something like that. All the company bargained for was allowing the special counsel to talk about the agreement. But that leaves open the question, what opportunity did the government have preexisting to talk about the whole matter? And if you didn't limit them to something narrow? To what they could say? Yeah, then have they really breached? I guess that's my question. And I think, Your Honor, to that point what I would say is inherent in every contract between two parties is the duty of good faith and fair dealing. And in our view, the fact that they announce a finding in clear contravention of what the parties agreed to, that does not comport to that. For example, a party to a contract couldn't then go out and say, well, the company agreed to pay us $2 million instead of $200,000. That's just materially wrong. They don't have the discretion to just say whatever they want or characterize it however they want. They can't go in and disparage the company. I would agree if they'd given the impression that the court made such a finding or that some adjudicatory entity had made such a finding. But it seems like they're only saying we had a good basis for making a case. Well, if that's what they said, Your Honor, we wouldn't be here. Because they said far more than we have a good basis or a reasonable cause to have a case. They're saying we found that you in fact violated the law, which was hotly contested. Isn't that just the threshold of what a prosecutor would do in order to avoid being accused of malicious prosecution? I don't believe so. I don't believe the prosecutor has to make a finding that something did in fact occur to bring a case. I think they have to have a reasonable basis to do so. They have to believe in a criminal context, which this, I think, is not. But in a criminal context, there's a high bar for a prosecutor to bring a case. I would certainly grant that. In a civil context, you have to have a reasonable good faith basis that there's a basis for the dispute. That's what the government claims they had. That's what they agreed in the settlement agreement that they had is a reasonable cause to believe that a violation occurred. That is different than saying it did in fact occur. We just settled it to avoid having to pay litigation fees or deal with lawyers or take a risk that a judge might give us a worse deal than we can settle it. That's a totally different deal. To say we had a reasonable cause to believe something happened and the other party denies that they did anything wrong indicates that there's dispute about whether in fact there was a bad or illegal act. To say we've already found the illegal act occurred, we're just going to settle this is a far different message. That's why it's material to the company. That's why within three days or two days of the announcement, they immediately wrote a letter to the government and said, hey, you broke the agreement. You breached the agreement when you said that you found that we did something wrong. When in fact there had been no evidence provided to the company that there had been any violation. How is this dispute before this court? I mean, you agreed to pay $200,000 and you've told them we're not going to pay. Now, do they sue you for breach of contract? Correct, Your Honor. That's where we're here. They brought it as a specific performance action, asking the court to require the company to specifically perform its obligations. And then we countersued the government under the Little Tucker Act, also seeking declaratory relief. There were cross motions for summary judgment. Our view being that it's axiomatic that saying you found in fact somebody violated the law versus having reasonable cause to believe that there was a violation of the law is fundamentally different. And as a matter of law, the court can hold that that was a material breach. Do you think the company was free to say there wasn't even reasonable cause to believe that we did anything wrong? For the company to make a counter statement? I think what they bought was- In fact, we don't think there was even reasonable cause to believe we did anything wrong. And we think the government was out to lunch on this, but we settled it. Well, I think, Your Honor, what the company did was deny any liability, which is a broader statement. Oh, that's narrower. It's narrower. You could have reasonable cause to believe but still not have sufficient proof that you- Right, and to say that we didn't do anything, Your Honors, then that was- You could say we don't think there was reasonable cause because we didn't in fact do anything. We deny all liability. We deny this happened. But we don't want to hire lawyers to fight this thing, so we'll pay you $200,000 and we'll all go our separate ways. Yeah, we won't spend time arguing about this in the media later because the duties and obligations are set. You believed we did something. We deny it. That's different than saying we found you did it and you denied it. That's a fundamental difference. Your Honors, I see my time has expired. I hope I've addressed the questions asked of the court. We would ask that the court reverse the district court. Thank you, Mr. Breslin. Thank you, Your Honors. Mr. Swarup. Good morning, Your Honors. May it please the Court. Vikram Swarup on behalf of the United States. As this court noted, the question here is whether the United States materially breached the settlement agreement as a result of the wording in a press release. There are three subsidiary questions there that Nebraska Beef has to show. First, they have to show that there was some sort of duty. Second, that there was some breach. And third, that the breach was material. In our view, they can't show any of these three elements. First, if I can turn to duty first, there's just nothing in the agreement that restricts what either party can say about the agreement. The United States has the right to educate the public about its enforcement activities as it deems appropriate. And if a private party like Nebraska Beef wants to restrict that ability, they have to negotiate for a specific and explicit term in the agreement that would do that. Why would the government do this, though? Why would they reach this agreement and then go out and make a stronger statement about the company's culpability? Your Honor, the press release is not a stronger statement than the settlement agreement. What the press release says, and this is misrepresented throughout Nebraska Beef's briefs as well as here today, we didn't say that our investigation found that Nebraska Beef violated the law. The press release doesn't say that. What the press release says is that the department's investigation found that the company required non-U.S. citizens, but not similarly situated U.S. citizens, to present specific documentary proof of immigration status. There's nothing in there about whether or not Nebraska Beef violated the law. We didn't say that a court had found that. We didn't say that we found that. And we didn't say that Nebraska Beef admitted that. Well, the second sentence says the INA's anti-discrimination provision prohibits what you just said that you found them to be doing. So I don't understand what you mean when you say we didn't say they violated the law. I don't either. Your Honor, so we said that we found this fact, and we said that this is what the law requires. From that, you could conclude that there's a possibility that they violated the law. What you can't conclude is that there was some sort of judicial determination that they had violated the law. Well, I agree with that, but I don't understand. For you to say we never said they violated the law, that's your first position, and you have to consider your credibility when you make that argument. Why didn't you just say what was in the contract, then, instead of what you did say? I don't understand what your argument is here now. Your Honor, so what the contract says is that we had reasonable cause to believe that they violated the statute. So that's the legal standard from the statute that gives us authority to bring a lawsuit. And you did a press release that said that we found that they did violate the statute. Is that you had reasonable cause to believe that they may have? No, Your Honor, what the press release says is that we found this underlying fact that they required different documents for noncitizens and citizens. And that's the underpinning factual finding that the investigation, and it says the investigation found that. So the investigation has to find that for there to be a reasonable cause to believe that they violated the statute. They're saying two different things. Why does it have to find that? Why doesn't it just have to conclude that there's reasonable cause to believe that they were making these documentary demands? Your Honor, the way that we have reasonable cause to believe it is by conducting an investigation and the investigation finding that they did engage in these documentary practices. The press release said what happened as a matter of fact. Well, if you say we have reasonable cause to believe that they may have violated the statute, but this kind of evidence is hard to put together and present, so we're not going to say they violated the statute. So we've negotiated a settlement here is kind of what's happened, but you went beyond that, didn't you? No, Your Honor, I don't think. First of all, there's nothing in the agreement that restricts what we can say in a press release. That's the threshold question before we even start parsing the language of a press release. If they wanted to engage in this action. It's just sort of dirty pool, though. I mean, if you're the government, why would you do that? Say, well, we negotiated this. We aren't restricted in what we're going to say, so now we're going to go out and dirty up the company. I honestly don't think that this is in any way misrepresenting the settlement agreement. Didn't the company try to bargain for something? They did. And the government rejected what they sought to have included in the agreement? Yes, Your Honor. The government rejected that and said, look at our prior press releases to see what we do in our press releases. So they knew exactly what we said in our press release. Did the prior press releases do what was done here? Yes, Your Honor. They have the exact same language, and that's in the record, the prior press releases. So they asked for an express term that would have created some sort of meet and confer type obligation that would have let them negotiate about the wording of press releases. We said, no, we can't do that. Look at our prior press releases to see what we do. And they signed the agreement anyway without an express term along those lines. And now they're raising all these questions about whether, you know, it was what they wanted or what they didn't want, but they just didn't negotiate for a term along those lines. Well, I read that statute, and it's kind of hard to figure out really what it says in all candor. And so this wasn't a slam dunk kind of a violation, it would seem to me, or proof of a violation. It may or may not have been. I mean, if, I mean, but that wasn't, that has no bearing on whether. But you issued a press release saying, hey, we got these people by the ear. Your Honor, that's not what the press release says. I mean, it doesn't say Nebraska beef, you know, that a court found that Nebraska beef violated the law or that the United States found that Nebraska beef violated the law or that Nebraska beef admitted that it violated the law. It doesn't say any of that. It doesn't say there's a slam dunk case against Nebraska beef that it violated the law. What it says is that the department conducted an investigation and that the investigation, the result of that investigation was a finding on the part of the department's investigation. They violated the law? No, that they requested different documents of noncitizens than of citizens. Which is a violation of the law. Well, which certainly in our view is a violation of the law, but that's not the only. What we said is that our investigation found this underlying fact, not that our investigation found them liable. We said our investigation found this underlying fact, and here is the law that would apply to that fact. And that's all the, and all of that is true, first of all. And second, it's fully consistent with the settlement agreement that has no provision that restricts what the United States can say. So your argument now is that the Nebraska beef is a slippery crowd who's trying to avoid the $200,000 payment that they agreed to pay. Is that it? Your Honor, the district court found that they had shown considerable recalcitrance in holding them in contempt of a court order. So that happened after the briefing in this case is that Nebraska beef moved to stay its obligations pending appeal before the district court. The district court rejected that stay. It didn't appeal that stay determination. And then it continued not to perform any of its specific performance obligations as to the injunctive portions of the settlement agreement until the United States moved for contempt against Nebraska beef. And then they started performing, and the district court held that they didn't start performing in a timely fashion within the 60 days after the district court's order. And so held them in contempt and found that they had shown considerable recalcitrance toward the performance of the obligations under the contract and the court's order. I mean, this settlement agreement was entered in 2015, I believe. I believe it's August of 2015. And here we are in 2018 under that contract. So, you know, we haven't taken the position that they are acting in bad faith, but certainly immediately after, three days after they signed the agreement, they refused to perform their obligations until the district court held them in contempt,  And so the one issue that I haven't touched on is the materiality issue. I'll just note that even if this court concludes that there was some breach of some obligation in the contract, there wouldn't be a material breach. To be a material breach has to violate some essential purpose of the contract. And the essential purpose of the contract here, even under Nebraska Beef's characterization of that, was to avoid litigation on the United States' potential employment claims without admitting liability and without a judicial determination of liability. They haven't admitted liability. There has been no suit brought against them on those employment claims. So the purpose, even as they characterize it, remains fully intact. So what they really seem to be suggesting here is that they wanted to avoid any perception of wrongdoing whatsoever, but that's not even how they characterize their purpose in their own briefing on this issue. So if the court doesn't have any— I have a question about the underlying investigation. Yes, Your Honor. What is it that the government thought the company was requesting from these people? Your Honor, I believe it's specific sort of immigration documents, like green cards or work permits that they were requesting from noncitizens. So you're saying the law is that a company who's trying to avoid hiring people that it's not supposed to hire cannot ask a person for a green card or work permit? Your Honor, there are specific documents that it can request of all potential employees, and it can't request different documents based on whether it perceives somebody to be a noncitizen. And that's the law generally. And this goes back to the 1986 immigration compromise, where Congress—that's when it became illegal for employers to hire undocumented or illegal noncitizens. So what can a company request? So there's a specific list of documentation. What are some of the typical documents that can be requested in this list? Well, there's a list, and then potential employees get to decide on the—I believe it's the I-9 form. But I believe you can show a passport. You can show a driver's license and a Social Security card. There's just sort of a list, and then individual employees can choose, have the choice of determining what they want to present to their putative employer about. And the employer is required just to accept them at face value? I'm not— Does it go beyond that and ask for immigration, really, a green card? What it cannot do—I don't know what it's allowed— what it cannot do is request additional documents based on the citizenship status of its employees. Whatever the category of documents are that it allows any employee to produce, that's the category. And it can't go out—it can't create a different category of documents or require additional documents for non-U.S. citizens than it did for all employees. And that's in the statute. And that's sort of the—so the compromise was basically that, in addition, Congress was concerned that once you start prohibiting employers from hiring illegal non-citizens, then there's going to be discrimination against all non-citizens, including work-eligible non-citizens. And so Congress wanted to avoid that, which is the genesis of this statute. And one of the parts of the statute is the provision regarding the documents. Work-eligible non-citizens have a green card or some sort of a card like that, don't they? So that they can—and they can't ask for that? I believe not all work-authorized non-citizens have green cards. There are categories of work-authorized that are work-authorized but do not have a green card. And it's really just getting at making it—you can't create different burdens for non-citizens than for citizens. Well, a citizen would have no reason to have those documents. But you're saying even though a non-citizen is required to have some extra documentation to work, the company's not allowed to ask for it because citizens wouldn't have any reason to get those documents. Your Honor, so there's the limited category of documents, and non-citizens may have some of those documents such as a driver's license and other sorts of documents that are on the list. So as long as they have the documents that are on the list, you can't say, hey, go give me these additional documents or these different documents that were not on the list that I gave you to start with. So as long as they have the documents that are on the list, then they're good to go. And there can't be sort of a different request of non-citizens than there has been of U.S. citizen workers. If the Court doesn't have any other questions on the case, we'll ask that you affirm the judgment below. All right. Thank you. Mr. Brislin, I believe you used up your time. I did, Your Honor. I would ask for one minute of the Court's grace here. I believe it's been represented that I misrepresented something to the Court. If our client was recalcitrant at the Court below, I'd like to at least have one minute to address those questions. You may reply. With regard to the misrepresentation statement, I believe Judge Colleton pointed out exactly what I was going to say there. It's not an intention to misrepresent anything. The press release is in the record here. It's an addendum to our brief. It speaks for itself. I'll say two other things with regard to the argument I heard. The agreement itself restricts what the government can say. It's not an accurate statement in our view to say that there is nothing that restricts what they can say in their press release. The agreement itself provides the parameter for what was agreed to, and that is what can be said. What provision restricts what the government can say? In our view, Your Honor, it's confined to the terms that were agreed to by the parties. They can't go in and misrepresent, again, in our view, what the deal was or what the factual basis was. The factual basis was that they conducted an investigation. They made a determination that they had a reasonable cause to believe that this was violative of the laws. Okay, I just wondered if you were referring to a provision in the agreement. I'm not, Your Honor. I'm talking about the four corners of the agreement in total. With regard to the reference to the stuff that's not in the record below, I would just note for this, Your Honor, and I do not need to go into all of it, but obviously we disagree with the court's characterization of what happened. Every non-monetary term of the settlement agreement has been complied with. There was an issue with regard to the company's inability to locate a certain number of documents to comply with the obligation that it notify all people who had applied for a position. That was rectified, not in a manner that the court found timely, and that was the court's order below. Thank you, Mr. Berthelsen. I think we've got your argument. Yeah, and I just wanted to clarify one thing about the law that Mr. Suarez said. The law is that the company can't ask for any documents. The company can only provide the list of the documents from which the employee gets to choose. Once those are presented, the company cannot ask for different or further documents. Thank you, Your Honors. Thank you, Counsel. Court, thanks both of you for your presence and argument to the court this morning. We'll take your case under advisement and render a decision in due course. Thank you.